Our next case is case number 417-0571, the people of the state of Illinois v. Vincent Schnoor. Is that how you pronounce that last name, Counselor? That's right, Your Honor. All right, for the appellant, we have Mr. Brieffield? Breffel, Your Honor. Breffel, okay. And Mr. Rodegna? Thank you. You may proceed, Mr. Brophiel. May it please the Court, my name is John Brophiel. I represent Mr. Schnoor, defendant in this case. Mr. Schnoor was convicted of aggravated robbery and robbery of a financial institution after a jury trial and sentenced to 25 years in prison. This is a direct appeal following his judgment of conviction. We've raised five issues in our appeal. However, I'd like to focus my comments today on the fitness and sentencing issues, though I am certainly happy to answer any questions this Court may have regarding the ineffectiveness of the Counsel and Crankle issues. As for fitness, the State concedes that the trial court committed an error when it failed to conduct an independent fitness inquiry or exercise its independent discretion to determine whether Mr. Schnoor was in fact fit to proceed with the trial. Trial counsel had a bona fide doubt as to the defendant's fitness. He requested an evaluation. The evaluation was done by a physician. The party stipulated to the physician's conclusions. But again, instead of conducting an independent fitness inquiry, the trial court simply agreed to the stipulation that the parties presented. To be sure, the State argues that the error here is harmless. But this is a second qualifying error case. Harmless error is applicable when there is a preserved constitutional error. Counsel, on this fitness question, when Counsel raised this issue, he moved for a fitness exam to determine whether a bona fide doubt exists with respect to the defendant's fitness for the stand trial. Did he not? Counsel requested a fitness examination. I don't think there's a specifically clear record as to what the basis for that request was. But the statute contemplates that a fitness examination occurs when a bona fide doubt exists. Did the trial court ever make a finding that it is a bona fide doubt as to the defendant's fitness? The trial court never made any findings at all on this particular issue. Is that a no? I'm sorry? Did the trial court ever make a finding? They did not make a finding as to a bona fide doubt, Your Honor. Is that important? No. I think there's two things to keep in mind. The statute contemplates that an examiner physician will be appointed when there is a bona fide doubt, and then a defense attorney raised that issue before the court, that's why an examiner physician was appointed. But more than that, the record itself here, although we don't know what private compensation is. Which statute are you referring to? Just one second, Your Honor. I'm going to have to look that up and get it to you. I think it's 104-11A, isn't it? That sounds correct, Your Honor, but I'm going to have to take a look at it and let you know. Well, the reason I ask it, there are two. Do you discuss section 104-11B in your brief? I don't believe that we discussed the specifics of the statute in the brief, sir. Aren't there differences between those two? And isn't what happened in this case subject to 104-11B? I'll have to take a closer look at that and address it. Well, so I don't want to be dancing around with this, counsel. I'll get directly to the point. It seems to me, and there's case law holding in this court last year in People v. Westfall and in People v. Hanson, that the trial court's mere act of granting a defendant's motion for a fitness exam cannot, by itself, be construed as a definitive showing that the trial court ever had a bona fide doubt of the defendant's fitness to stand trial. And I won't contest those cases holding this area. Well, because if the trial court hasn't expressed that, then there's no need for a fitness exam. And, in fact, under paragraph B, it says the following. Upon request of the defendant, as in this case the defense attorney made a motion, that a qualified expert be appointed to examine him or her to determine prior to trial if a bona fide doubt has a history of fitness to stand trial may be raised. The court, in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in this case. Now, as explained by this court last year in Westfall and by the spin court 15 years ago in People v. Hanson, the necessary and the important distinction is the trial court making a finding that it had a bona fide doubt of the defendant's fitness to stand trial. Until and unless the trial court makes that finding, paragraph A doesn't apply. I would disagree to the extent that the record here makes an affirmative showing that there was a doubt, a bona fide doubt, as to this particular defendant's fitness. By the trial court? The trial court never made any findings with regard to this at all. What I'm saying is the case law in Westfall, the case in this court last year in Hanson 15 years ago, makes clear that it's the trial court's statement that it has a bona fide doubt as the defendant's fitness to stand trial, which is the necessary threshold for a requirement of fitness here. I think our problem with that theory, that if the trial court stands completely silent and abdicates all of its duties to establish that the defendant is in fact fit by just never saying that there's a bona fide doubt, then there could be no constitutional protections for the defendant who is unfit like this particular defendant. No, there's a middle ground. That is, the trial court doesn't have to make a finding. And if defense counsel raises the issue, the trial court, without making a finding, can do exactly what the trial court did in this case, namely appoint counsel to determine whether or not there is a bona fide doubt as the defendant's fitness to stand trial, which was the request defense counsel made. And then they got the report back saying to the doctor, no, he's fit, at which point they could stipulate to it because it's not a fitness hearing. That is, in our view, inconsistent with the United States Supreme Court precedent, which states very clearly that the record must establish that the defendant is fit to proceed to trial in order to protect the defendant's constitutional rights to be fit, to retry, or to make critical decisions about his case. In this particular case, the record is replete with evidence that this defendant was certainly, there's certainly a bona fide doubt as to his fitness, and it seems to suggest that he was actually unfit. The court, the court must ensure that the defendant is fit. There is plenty of case law that says that the defense attorney is infected for failing to raise fitness. Here the defense attorney did raise the issue, and that the court, if the defendant, defense attorney doesn't raise the issue, that the court has to step in and raise the issue. Do you discuss Westfall or Hanson in your brief? I don't think either party discussed those cases. I think that's right. So this court last year, when we laid this all out, explicitly how this works, and with the Supreme Court following the Supreme Court 15 years ago, we were wrong? If this court is going to adhere to a rule that allows the trial courts to not make a finding on fitness, or exercise its discretion to make a finding on fitness when there is ample evidence to suggest the defendant is unfit, we believe that is unconstitutional and inconsistent with United States Supreme Court precedence. So it's unconstitutional for the court to order an examination without making a finding of bona fide fitness? Bona fide doubt is fitness? I think it's, in this particular scenario, under these unique facts, there's a very strong possibility that this defendant was unfit at trial and when he rejected the plea offers that were given to him, and the United States Constitution cannot tolerate that. So the defense counsel said, I would make a motion for a fitness exam to determine whether a bona fide doubt exists with respect to Mr. Schor's fitness. That's at the hearing on March 7. The defense counsel didn't even say, I believe, which under our case law wouldn't have been enough. But then when the trial court entered the written order, it says the court shall examine him and determine whether, file a written report, and shall determine whether, if he is fit or not fit to stand trial. And the court made no finding ever that it had a bona fide doubt. Correct. And neither did the appointed physician. The physician simply moved past that and made a finding as to whether the defendant was, in that physician's opinion, fit or not fit. The court never scrutinized that opinion, never examined it, never commented on it. It merely accepted the parties' stipulation. I think what's important to remember is the report that was prepared detailed all of the facts that would lead many people to believe that this defendant was possibly unfit, if not actually unfit. In addition to that, what the physician didn't know is that this defendant had threatened two different judges on three separate occasions, had claims that he was stealing money from either this bank or ATMs, that he could steal two helicopters and fly them to an isolated location, refuel and fly them into prisons. He had asserted inconsistent and incomplete defenses at trial, and he also rejected very favorable plea deals in the face of at least strong evidence of his guilt. I think it would be – I think this record makes clear that the defendant's constitutional right to be fit, while he proceeded through this case against him, was not honored and was not established clearly enough to satisfy due process under the United States Constitution. I think if this court does make that finding, there's a bigger question of what happens next. And the state is – If the court makes what finding? I'm not sure I understand. If the court makes the finding, if this court finds that the trial court fails to protect the defendant's rights to a record establishing his fitness and fails to exercise his discretion to determine that the defendant was fit, then the case needs to be remanded for a fitness hearing. And the parties dispute whether that should be a prospective fitness hearing or a retrospective fitness hearing. And from our perspective, the law is clear. When we're dealing with a constitutional right to a fitness hearing,  the United States Supreme Court, on three separate occasions, has found that a retroactive fitness hearing is in order to protect the defendant's rights. In other words, that there has to be a prospective fitness hearing. And two separate panels of this court has also made that finding, that there needs to be a prospective fitness hearing. And the state relies on our Supreme Court, the Illinois Supreme Court's, by holding a Mitchell to say that a retroactive fitness hearing has now become the norm. But that is a case that involves a statutory right to a fitness hearing when the defendant is on psychotropic medication, regardless of whether or not there is a doubt as to the defendant's fitness. In other words, in Mitchell, the issue was, was trial counsel ineffective in failing to assert this statutory right? And the court ultimately made very clear that this was not an issue where there was a doubt as to the defendant's fitness. It was just a statutory right. And therefore, it was the kind of narrow case that would be susceptible to go back for a retroactive fitness hearing. That's not what we have here. Mr. Schnoor certainly needed psychotropic medication. He'd been prescribed psychotropic medication. And he had the correct diagnosis that would suggest that he should have been on it. But everybody agrees that he was never on psychotropic medication. This was a case in which there was a doubt as to the defendant's fitness, not a statutory right to a fitness hearing because of this now-repealed statute granting him on psychotropic medication. We believe that Mitchell and his progeny must be narrowly confined to those facts and circumstances where they're dealing with a statutory right that was not exercised by trial counsel. And then the question is whether trial counsel is ineffective for failing to reassess. Here we're dealing with a record that does not establish that the defendant was constitutionally fit to make critical decisions about his case. And, again, the United States Supreme Court has been clear that that requires a prospective fitness hearing. If there are no other questions on that, I would like to turn to the statute. The sentence here, 25 years, was substantially longer than the 15-year sentence that everybody discussed at the 402 conference, and longer still than the 14-year sentence that the state recommended or was willing to offer at least after the 402 conference. Counsel, do you have any case law that supports the argument that the trial court is bound by proposed plea deals? No, and I don't think that there would be any case law to suggest that the court is bound by plea deals. And would you agree that many times after a trial and a sentencing hearing, a trial court is apprised of much more regarding the defendant, his potential for rehabilitation, prior history, those things? Would you agree that the trial court has much more knowledge at that point than at the time you might be having a 402 conference? I would agree that's often the case, Your Honor, yes. And so why are you arguing that somehow we need to look to what the plea offer was or the discussions at the 402 conference in determining or evaluating the sentence imposed? I mean, is it relevant? Yes, Your Honor. I think there's a difference between learning additional information and learning aggravating information, and, quite frankly, learning mitigating information. Here we have a record of the 402 conference. It was an on-the-record 402 conference, and it followed the fitness evaluation where the court was appraised of all of the many sad facts of Mr. Schnorr's life and his potential mental illness. The state apprised the court of all of the facts that it was going to hear at trial and at the sentencing hearing. At that time, the court made a finding. It said specifically that a 15-year sentence would be reasonable and appropriate in this case. What kind of finding? It was a 402 conference. It's an on-the-record statement by the court. It doesn't make it a finding. Every utterance that a court makes on the record is not a finding. We can characterize it slightly differently, if Your Honor wishes. We can call it the court made a statement that a 15-year sentence would be reasonable and appropriate after hearing all of the facts that were presented at the 402 conference, and having been sitting on the case. Are you suggesting that the court then was saying that that's an appropriate sentence? Yes. I'm suggesting that the court said it was an appropriate sentence. Or was the court saying, I'm willing to accept that? If that's what you all work out, I'll go along with it. The court could have said that. But what the court, what the judge specifically said was that 15 years would be reasonable and appropriate in this case. And they wanted to say, if the defendant entered an open jury, that there may be more or less time given based on the facts that were presented. So the question is, were there more aggregating facts presented at the subsequent trial or the subsequent sentencing hearing? Your Honor, you presume with that statement, you presume that the court is now bound by that figure. And I dispute that. I'm looking for any statutory or case law authority that says that the court, by merely commenting upon whether that sentence would be reasonable under a plea agreement, is now bound to make that the ceiling of any sentence that it is likely to impose. I think the case law is clear that the court is bound not to punish the defendant for taking the case. Because that wasn't my question. And that answer isn't responsive to anything. We are not arguing that the court is bound by the negotiations per se. We are arguing that the negotiations per se. You mean there's a situation when the trial court is bound by the negotiations? Yes. I think if the court were to say during a 402 conference, no other sentence greater than 15 years would be appropriate under the facts of this case, then I think it would be probably bound by that, even if the defendant went to trial and was convicted. Now, at the time of the 402 conference, I have never been in a situation as an attorney or a trial judge where there was a PSI prepared in anticipation of a 402 conference, the pre-sentence investigation. Did that happen here? Did the trial court have that at the time of the 402 conference? It did not, Your Honor. You have the red. You have until the red light. Okay, thank you. And, again, even if the court at the 402 conference says that a 15-year sentence would be appropriate in this case, reasonable and appropriate, the trial comes out, the defendant becomes more sympathetic at trial, the PSI comes out, and, as in this case, provides more mitigating information, that would not be reason to justify an upward departure from what the court had reasonably, previously said was a reasonable and appropriate sentence. What appears to be the punishment for taking the case to trial. Why wouldn't it be appropriate to simply review what happened in this case as the court telling the parties it could tolerate the agreement, that it was willing to put, not unwilling to reject it, not unwilling to put its judicial imprimatur on the proposed guilty plea, and nothing more? They could have said, I'm willing to accept that agreement, but it didn't. So we're now parsing what the court says at a 402 conference as a basis that somehow its remarks are going to be limiting, what the court can impose at an arm's length sentencing proceeding that the defendant rejects the plea offer? Yes, I think the words that the court uses matter. Including the words, the sentence might be higher, the sentence might be lower. That was in the event of an open plea upon the discovery of further information, but further information that we discovered at the sentencing hearing and at the trial were mitigating information. I got a hunch the state is probably going to argue that there was aggravation. It's just a silly idea I got. Well, counsel, you're out of time. You will have additional time on rebuttal, though. Thank you. Thank you. Counsel? Counsel? I was going to talk about argument number one, specifically the Fitton's proceeding. However, I'm not familiar with the issue which Your Honor raised, and I did not discuss it in the brief. So I'm not sure that me talking about this issue further would be of any benefit to this court. I would leave that, I guess, up to this court as to whether or not it wants to hear an elaboration of the argument that was made by the state in its brief on issue number one. Fair enough, counsel. You can move on to what you do want to discuss at this point. Again, the only thing I was going to talk about was argument number one. Oh, okay. Well, what are your thoughts with respect to the plea agreement and the sentencing issue? The state is not aware of no authority that would hold a trial court to a sentence which was discussed in 402 D here. The question, as I believe is presented by the case law, is whether or not the sentence imposed is outrageously higher than the sentence that was discussed at the – offered by the state or as discussed in 402. And this sentence of 25 years is opposed to 15 in the case law, clearly not outrageously higher. Consequently, I would suggest that there has been no demonstration made on that particular ground, certainly, that this was an improper sentence and abuse of discretion. Thank you, counsel. Thank you. Any rebuttal, counsel? Yes, ma'am. Okay. I'd like to be clear about this very limited issue, I guess, on rebuttal here. I'd like to note the state is not arguing that there were more aggravating factors presented at trial or at the sentencing hearing to justify the upward departure. I'd also like to note that the standard is not whether the sentence was merely outrageously higher than the one offered at the 402 conference. The standard is, and I quote, according to People v. Sturgeon, the standard is when the court makes explicit marks concerning the harsher sentence or where the actual sentence is outrageously higher than the one offered at the pre-negotiations. Here we have explicit remarks by the court at the 402 conference concerning what the appropriate sentence would be. It's sentencing. At the sentencing hearing, it offered no explanation whatsoever for why it departed from what it previously had characterized as a reasonable or appropriate sentence. I think also probative, though not dispositive in this case, is that the state was willing and was going to offer up to 18 years upon an open plea, but then at trial recommended a five-year sentence. I think what an open plea would suggest is that the state, there is no wavering, that the state is simply making a recommendation for what it believes to be an appropriate sentence. But everybody after trial jumped up in their recommendations to the court, and the court, without any explanation. So an open plea is the same as a trial? Constitutionally, a defendant cannot be punished for taking his case to trial. See, that's an interesting point, but not responsive to the question I just asked. Is an open plea the same as a trial? No, an open plea would not be exactly the same as a trial, but it would have the same result. A trial is a trial. There's the possibility of an acquittal. There's the difficulty and certainty of putting down a case as opposed to an open plea. Correct, Your Honor. So sentences that are a result of what an open plea, that should be, the state should be bound, but they're limited to that same sentence after trial? It would seem awfully vindictive of the state if it was increasing the sentence that it was recommending merely because the defendant was exercising his constitutional right to go to trial. And rejecting the state's offer? Well, an open plea wouldn't be an offer. Well. An open plea would be a plea without an offer. So I think what we have here is certainly a question as to whether the defendant was penalized for taking his case to trial. Certainly, from some perspectives, it may have that appearance as well, if not was actually proven by the proceedings. I would like just to finally note, and we didn't discuss any of the other issues in particular, the harsh and excessive claim that we make in the briefs. We would like to rely on the briefs for that. And I would answer any other questions this Court may have. Otherwise, you will rest my briefs. I don't see any additional questions. Thank you. We'll take this matter under advisement and be in recess.